The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is United States v. Paul M. Weadick, appeal number 181899. United States v. Francis P. Salemi, appeal number 181932 and United States v. Paul M. Weadick, appeal number 181933. Attorney Gerzog, please introduce yourself on the record. May it please the court. My name is Lawrence Gerzog. I represent Francis P. Salemi. Good morning, Mr. Gerzog. You may proceed. Your Honor, I would like to reserve two minutes of my time for rebuttal, if I may. Yes, you may. Thank you. May it please the court. My name, as I said, is Lawrence Gerzog and I represent Francis P. Salemi. I was not counsel for Mr. Salemi in the district court below. I would like to focus my argument today on the issues of the jury instructions. As the court is aware, there are two problems we argue with the jury instructions. The first is the so-called Fowler error or the problem with the Fowler situation. The second is the failure of the court to distinguish between aiding and abetting and accessory after the fact. With respect to the Fowler part of the argument, we say that the jury failed to instruct, rather that the judge, failed to instruct the jury correctly in that she said that the jury only had to find that the defendant's intent was to prevent a possible communication with a federal officer, as opposed to the Fowler standard, which is that there has to be a reasonable likelihood that the communication would occur. Your honors, I'm sure, are aware or are familiar with the Fowler case. This case made clear that it is not enough for the government to prove a possible communication. If you think about it, that makes a lot of sense in that that's an almost obvious standard. There's always a chance of a possible communication. In order to meet the terms of the statute, the Supreme Court has said that there has to be a reasonable likelihood. Is this? Are we talking about plain error review here? Well, your honor, we have argued it under both standards, but we feel that it is applicable under either standard. Was there an objection? Was this objection lodged after the instructions were given? As I understand it, and again, this is from reading the record as opposed to actually being there, but as I understand it, there was an objection originally, but there may not have been an objection after the instructions were read to the jury during the trial, during the jury instruction portion of the charge. So, you have to correct yourself to the third prong of plain error review. Well, your honor, I think that under these circumstances, the fact that this is a clear error of law and prejudiced Mr. Salemi's opportunity to receive a fair trial, the government talks about how the, in grouping the evidence, how the evidence together indicated that Mr. Salemi's guilt was so clear that it doesn't really matter whether there is a slight error in the jury charge. Go ahead. Was it? All right. But I think that the nature of the charge is such that it was critical, crucial to the jury's understanding and that the jury could very well have, incorrectly, could have convicted Mr. Salemi under an incorrect standard, under a standard that is not adequately or accurately fit within the elements of the crime and that therefore, the third prong of the plain error test is met. If I may move on to the accessory. Before you do move on, just two questions on the prejudice prong of plain error. Could you explain how, in your view, the instructional error that you're identifying would have been prejudicial? Because the instructional error only goes to the motive for the killing, not whether there was a killing that he was involved in. And if the evidence was strong enough for there to be a finding that there was a killing, the instructional error would only bear on what the jury would find about motive. But what evidence is there to suggest the motive for the killing would have been other than silencing him from communicating with the federal officials? Well, that's part of the point of Fowler, which is that the intent portion has to make it clear. That's going to whether there was error. I'm saying if there was error, given what the evidence in this case is, if the evidence supports the finding that there was a that he committed the killing, what evidence is there that would suggest the motive was other than overwhelmingly to silence him from speaking to a federal official? Because that's what you need to show that the instructional error mattered as to what the jury could find on intent. The government says there was such overwhelming evidence that if there was a murder, the murder was to silence him from speaking to a federal official that even an error on that instruction wouldn't matter. What's your response to that? Well, my response to that is that there was not overwhelming evidence that the intent, even if your honors were to suggest that there was overwhelming evidence of a murder, your honors understand that a murder in and of itself. Very well. Can I ask you just on the backing up one step from the prejudice issue to the second prong of plain error? Fowler is clear that if there's a communication, it has to be reasonably likely that the communication was about silencing a federal official as opposed to a state official. I don't see Fowler saying anything about how likely the existence of a communication at all to be. So how is it clear or obvious that that too has to be reasonably likely as opposed to there was an intention that was possible of a communication and insofar as he intended for there to be a communication, it had to be reasonably likely that that intention for the communication was about a federal official. But where do you getting that it's clear from Fowler that it had to be reasonably likely that there would have been a communication? Well, I think there's language in Fowler that makes that clear, your honor. And I think that if you were to hold that simply a possible communication to someone, that there's always a possible communication to someone that that's the whole point of the reasonably likely portion of that of what the Supreme Court has interpreted a statute to mean. And I think that a careful reading of Fowler suggests that it is that that modifies that the reasonably likely modifies both what your honor has stated and also the probability or possibility standard. This is Judge Smith. The statute speaks in terms of possibility and I thought Fowler really went to the kind of situation where there really wasn't evidence from which the jury could infer reasonably whether the communication was going to go to a state law enforcement or municipal law enforcement officer versus a federal law enforcement officer and that it was it was kind of a toss up and the court said you have to have a reasonable probability that it was going to be a the facts in this case seem very different than Fowler and there are plenty of federal law enforcement folks swirling around the case. Lots of lots of evidence that it could be a federal contact. So, you know, I'm just not sure in that factual context why Fowler would apply. Well, I think it's interesting your honor use the word swirling around or the phrase swirling around and I think that's exactly the point. I think that you there has to be a difference between evidence that there is a suggestion that there is something swirling around a set of circumstances and that it has to be more than that that there has to be a reasonable probability that that that is what's going to happen. And of course, the court is aware that in fact, the victim of the murder never did make any kind of statement to a federal law officer or to a judge. So, the truth of the matter is like in Fowler, there was no direct nexus to a federal official of any kind. Thank you. Any more questions for him from the bench? Thank you. Thank you, your honors. Thank you, Mr. Gerzog. You can mute your device at this time. Very well. Thank you. And attorney Shea, if you could please introduce yourself on the record for us. Certainly. If it pleases the court, Mark Shea for Paul Wiedek. If possible, could I reserve one minute for rebuttal? Yes, you can, Mr. Shea. Thank you. So, judges, I'll kind of pick up on what I was ferreting out as seemed to be your interest. And I would point particularly to Paul Wiedek, I'd like to point out that the prejudice is substantial. Because if we focus on Wiedek for a moment at regarding Fowler, I mean, he is never under federal surveillance. He is never on a federal wiretap. He is never involved in a federal crime, at least that comes out in the trial or that he's ever been convicted of or, you know, the New Hampshire case came up with involving Junior, but that was a state crime in the state of New Hampshire. He's not under federal investigation. He never had any criminal Could you address the second prong then of plain error? The second prong in terms of the communicate. You need it to be clear or obvious that it had to be reasonably probable that there was a communication, as opposed to reasonably probable that the communication pertained to a federal official. Yes, I would say that it's not, I mean, it's as we tried to point out in the trial, it wasn't reasonably probable that it was going to be any communication at all. And as my co-counsel, You need it to be clear or obvious that there had to be a reasonable probability of that, as opposed to under the statute, merely that it's possible there would be a communication and that it was reasonably probable that possible communication pertained to a federal official. And Fowler seems to speak to the second point, not to the first. So how is it clear or obvious that the statute requires that it's reasonably probable that there be a communication, as opposed to merely possible that there might be one? Well, I think... Five minutes remaining. Okay, I think that it's clear that it has to be reasonably, a reasonable likelihood is the test under Fowler as applied to... I'll just say it one more time. It's clear from Fowler that it has to be reasonably likely that if there's a communication, the communication had to pertain to a federal official, as opposed to a the question of how likely, or rather just how possible, the fact of there being a communication at all had to be. So why is it clear or obvious that it was wrong to say that as long as there's a possible communication, that would be enough? Well, I would say it's a clear or obvious problem, because it effectively changed the standards by which the jury was making its decision. And maybe I'm missing your question. I apologize if I am, but I think that there is a clear or obvious problem constitutionally, because it's a constitutional error, and that it provided an alternative theory of guilt, and that the verdict shouldn't rest on a legally invalid theory. I hope that answers what you're getting at. But I think that there... My client's rights were affected by this change in the jury instruction to merely possible, because especially... One thing I would like to point out that I think Judge Smith was getting at, I would like you to recall the time that this was taking place in, the time period. You know, this is a time when the FBI, there's John Connolly, there's Paul Rico. It's a very odd, historic time, right? That's part of what made the case interesting. But there's so many different factions, but also factions literally within the FBI and federal agencies. And why do I bring that up? I bring that up because I think it also reflects on the question of what is possible, as opposed to reasonable likelihood. And that it so muddles the history of things, muddles things, as to what we can anticipate a defendant. And remember, and I'm sure you know this, Fowler says the relevant question is the defendant's intent. Well, what a defendant's intent would be in such a situation, in such a background as that, is very hard to muddle through. I point out that the jury in this case was out for, I believe, about four days. So they clearly were wrestling with something here. I think it's a question whether they were wrestling with connections, federal connections to the case, and that this instruction affected their verdict. So what do you propose the jury was thinking the motive was? I think there were, I would say there was competing evidence, right, as to whether DeSaro was just killed for being a bad manager, right, and that they were pissed off at him. And I use that, that's part of what was in the testimony. They clearly came to believe that he was killed to prevent a communication, but it's not clear that it was a federal communication. And it's, and as particular to Weedick, I think it's a real question as to whether, given the appropriate instruction, they would have found that there was a federal connection with Weedick's intent, this particular defendant's intent. And our sufficiency argument that's in our brief, I think, ties nicely into this argument as well. I just pointed out in terms of pointing out how differently situated Weedick was. Go ahead, go ahead, go ahead, Jeffrey. Well, I'd really like to have you address the testimony by DeLuca of Salemi's statement that DeSaro was killed because he was speaking to, or had spoken to, Mr. Wyshak.  Because if the statement is actually untrue, I think the government's position would be it doesn't matter whether it's true or not because it really speaks more to Salemi's intent, not to the fact that DeSaro had spoken to Wyshak. But where a piece of evidence, a statement that DeSaro had spoken to Wyshak was hanging out there for the duration of the trial, and I want you to speak to this, was it corrected before closing argument or only at closing argument? Where that's hanging out there, how does that affect the jury's consideration of the possibility of communication with the federal law enforcement? Yeah, well, so, I mean, let's put it this way, if it were to be believed, it actually kind of mutes Fowler, right? Because Fowler is a situation where we don't know who we specifically intended to communicate with, and the government is citing that statement. That's tough. If that's your answer. Okay. It's citing that statement in its brief in an effort to kind of bolster the fact that Fowler wasn't really relevant here, whereas it is relevant, and it was highly prejudicial to my client. As to your question of whether it was corrected, it was not corrected before closing argument. The government says the kind of one throwaway line corrected it. I would point out that in context, they don't even say that they're talking about Mr. Wyshak when they say, I think they say something like, no, he didn't communicate to federal authorities or didn't cooperate. That's what they said. But they didn't say he didn't communicate with Mr. Wyshak. That was never corrected. It is a real problem, particularly in it's a unique situation because Mr. Wyshak is actually sitting there in the courtroom and has, over the course of the six-week trial, taking into account some illnesses and things, built a relationship with the attorneys there. It makes it highly problematic, and it goes right to Fowler. I had, Judge Codd, I had one last set of questions, which just concerns your severance argument. Yes. If you could just succinctly isolate for me this one point, it would be helpful to me. As I understand it, the argument is that by having the joint trial with Salemi, evidence came in against your client that was so prejudicial, it was problematic. And if I'm following, if we set aside the 404 issue for a second, one of the contentions you make is that there was an inappropriate finding of your client being a co-conspirator with Salemi with respect to certain statements that were made about your client that would bear on his motive. If I agreed with you that it would be problematic to treat your client as being a co-conspirator with Salemi for purposes beyond the conspiracy to commit the murder of Tesoro, so that a statement about your client made in connection with the LCN conspiracy wouldn't be a co-conspirator statement that could be admitted on that basis, what is the statement that was admitted on that basis that you say goes to your client's motive that creates the prejudice that makes it improper not to have severed? Do you follow? I think so. If you could just identify what is the particular statement or statements that you're identifying as the ones that inappropriately came in under Petruzzello that created the prejudice to your client? We highlighted DeLuca's statements, which would be Robert DeLuca, to be clear. Now the one thing about the DeLuca statement is that that arguably is part of the ongoing conspiracy to commit the murder of Tesoro. I realize you have an argument against that. Is there any statement related to the LCN conspiracy that came in that bears on your motive that you think was inappropriately admitted pursuant to Petruzzello? I believe a statement from Flemmy came in, and Flemmy certainly wouldn't have been considered a co-conspirator in this, meaning a statement from Salemi to Flemmy regarding Wiedig. What is that statement? I apologize, I can't call up the exact statement right now, Judge. I would say that what we're really getting in terms of statements, it's really more the DeLuca statement in terms of Petruzzello, and I understand that there are arguments that DeLuca is in the conspiracy. We've argued that that portion of the conspiracy was not ongoing, but I think as to the statements in the case... There's no Petruzzello statement that came in against your client that was prejudicial with respect to his motive, other than the DeLuca statements? I believe that that's the case. Okay, thank you. Thank you, Mr. Gerzog. I'm sorry, Mr. Shea. Thank you, Mr. Shea. At this time, you can mute your device. Mr. Krom, could you unmute your device and introduce yourself on the record? Yes, Your Honors. I may please the court, Randall Krom, on what we have. To just talk first about the Fowler issue, which I know occupied a lot of the discussion thus far. Our position is that it fails all four prongs of plein air review, but certainly that it fails the second, third, and fourth. For reasons the court has alluded to, Fowler's really addressed to a different question, which was the question of, in a situation in which you have no evidence of a particular intent to federal, or what turned out to be federal law enforcement, you still... And that is, you get that, have I lost, been cut off? I see that I'm not. Hi, Mr. Krom, I'm interrupting. I just wanted to let you know that there is some bandwidth issues, probably on your end. You're breaking up a little bit. So, I wonder if it's possible, and Judge, forgive me if I'm just suggesting this, if he muted his video, but kept his audio open so that we could hear him, it may work better. I think you'd better try that if you want us to hear you. Yeah, no, I'm sorry that this is happening. I will shut off my video. Is this working better? I hope so. Why don't you go back a couple sentences and start again, sir, for the judges. Right. So, my point was that I believe that all four prongs failed to be satisfied in this case, but certainly the second, third, and fourth, because Fowler was addressing a question where you don't have evidence of intent with respect to federal officials, and here we did, and Judge Smith has raised a question to one piece of it, but perhaps the most clear evidence was the evidence that Sleimy said that he was speaking to a federal prosecutor, but at the same time, Wheeler had been subpoenaed by federal officials and appeared in a grand jury. Frank Jr. was under federal charges. Hillary had cooperated. Clearly, federal law enforcement pressure was what was going on, and that is where any communication would have occurred. Let me just ask you about that piece of it, though, because with respect to Wheeler, why is what you're saying as convincing? It was not charged as a conspiracy, so he's just charged with his own offense, and why isn't there at least more reason to doubt that his purpose was the same as Sleimy's, and that his purpose was, you know, he was stealing from him. That's why he was willing to kill him. Well, I think probably one of the clearest pieces of evidence we have is the testimony of Eldridge, who said that Frank Jr. and Wheeler had talked about the fact that he was talking too much, so there was clearly a concern. But what I'm saying is, with respect to, it's not a sufficiency standard. I mean, it's a prejudice standard, so is there a reasonable probability that the jury would have found otherwise? And as long as there seems to be at least a plausible other motive, which there does seem to be here for Weedek, it's not as if there's overwhelming evidence of that being Weedek's motive, is there? Well, I think, again, circumstantial evidence of motive is certainly permissible, and often all you have, and there's a long-standing relationship with respect to the channel. Yeah, but for the prejudice prong, there's no doubt that what you're identifying is evidence that would support a sufficiency finding. But with respect to a prejudice finding, since it's not as if there's no competing evidence of Weedek's motive, there was, which was that he was upset about DeSoro stealing from him. And then all you have is circumstantial evidence that would suggest his motive was to silence DeSoro. So why, in that circumstance, is it enough? Assuming there was a clear, obvious error, which is a different question. But again, I will come back to the Eldridge statement, because I think there was, we don't have only circumstantial evidence. We have evidence specifically of his conversation with Frank Jr. that he was talking too much. And that is specifically tied, and I think this is important, that is in the same conversation in which they talk about luring him to his death, and they talk about the need to bring him to a place where he would feel safe. So it's not like, I don't think this is a case where there's, by any means, equivalent evidence on both sides. I think there's pretty clear direct evidence about silencing. You do get to the question about whether it's a federal official, but I think, again, any standard of likelihood is met. And even if that standard applies, there's certainly, the jury was, you know, that was the only threat that was being faced. That was the only type of communication that was at issue. And I think that the jury not only certainly could have found, but I think the overwhelming evidence pointed to that any communication would have been federal. So I guess I just simply, I disagree on a prejudice analysis that this is a situation where it was reasonably likely that had the jury been asked to find whether, you know, whether there was a reasonably likely communication, it would have turned out any differently to federal officials. And I would also point out, because I think it's important to the second prong, and I don't, is that the, Fowler's not really aimed at the question of intent. So that, this is not really a Fowler error at all. And I would argue that the error you're identifying as a question about sort of watering down the intent is in some sense waived or likely waived here because they're arguing that it violated Fowler. And as we pointed out in our brief, Fowler addressed not intent, but it addressed a situation where you don't have intent and you need a federal nexus. And that is not that there has to be, that they have to intend likely communication. It has that there has to be evidence that there would be. And that's apart from the evidence of intent. It's sort of an objective additional requirement. I thought they were just saying that they objected to the notion that you could intend a possible communication. Well, but I'm making the point that the argument is based on Fowler. They're arguing that that violates Fowler. There's not a sort of a freestanding argument that even if it's consistent with Fowler or Fowler is irrelevant, that it is prejudicially so. And I just think it's an important distinction to make. Put that aside for a second. What is the, in the government's view, what does the government need to prove with respect to whether there was a communication at all? Is it enough if it's a fanciful or remote possibility? Is it that it has to be reasonably likely there would have been a communication of some kind? What's your account of the statute in terms of what the probability or likelihood of there being a communication has to be? What was required to be proved? Well, and that's key. And we've discussed it in our brief. We think that in the case in which the government is relying on intent, evidence of intent, that there is no freestanding or separate obligation to prove that a communication would be reasonably likely. I mean, in many cases, and I think the Supreme Court case discusses this, you're going to prevent a communication without any idea about whether it's going to happen or not. As long as the intent is shown to prevent communication to what turns out to be a federal officer, the federal nexus is established without going to the likelihood prong. And I think it's really clear in a couple of the parentheticals we raised in our brief. The Supreme Court is saying that in a case where there's evidence of intent, the statute applies directly without any need for any gloss. And that's what we had. We had circumstantial and direct evidence of intent to prevent communications to specific federal officials. And in that case, in our view, Fowler just simply doesn't come into play. And it doesn't matter whether the communication is more or less likely if there's an intent to prevent a communication to a federal official. That's the end. That's proven. That ends the inquiry. And Fowler comes into play in a circumstance that's not present here. Reasonable likelihood comes in when we can't show it. So just so I understand it, are you saying that this may not mean that it was a prejudicial error, but you're saying it was error to describe the statute as requiring there to be a finding of a possible communication? I'm not saying it was error. I'm saying that the likelihood of the communication really isn't an element. It's an intent to prevent a communication. And I think that whether the communication was or was not likely to occur is kind of not part of what the statute is asking for. Unless, again, in the circumstances where Fowler applies and we have no evidence of intent. And I think, again, I think Fowler is really clear about this. It's addressing a small category of cases where someone is killed to prevent them from talking generally without any ability to prove intent. Then we ask this nexus question. We cite a couple of cases they try to distinguish, but they make clear that where you have intent evidence, Fowler just really doesn't, isn't implicated. And that's why I'm saying I don't think Fowler has anything to say about this. I also don't think that that gloss of communication or possible communication really adds or changes anything because the likelihood of the communication isn't what the statute is aimed at. It's the intent. In a case where you have evidence of intent. And again, here, I want to address Judge Smith's question about Wyshak because I think that's the clearest. I mean, if you have Salemi saying he's talking to a federal prosecutor. Could I just try to put a finer point on my question about the DeLucas statement? Because in a trial, this would be such an easy thing for the prosecutors to cure.  When DeLucas says that DeSaro, that Salemi said that DeSaro spoke to Wyshak, all Mr. Wyshak had to do was tell Mr. Furlan we need a bench conference to walk up to the bench and say, I just want to let everybody know that didn't actually happen. And now the judge knows it and the defense attorney knows it and the defense attorneys can do what they want to do with that in cross-examination. Maybe they do something, maybe they don't, but it's out on the table. In this case, that was left to sit for weeks and then only sort of barely corrected during cross-examination. And I'm left to wonder, what's the effect on the jury if they've heard that and are thinking about that for weeks? And then it really almost barely gets corrected at the end. I mean, that just seems to me, I just don't understand why they didn't ask for a conference right in that moment. And I think your honor suggested that part of the reason in discussing it with opposing counsel, which is that this was not introduced for its true as a statement of what Salemi believed and therefore what it showed about his intent. We introduced other evidence, including the testimony of Wheeler talking about what DeSaro told him and the testimony of Asia Walther, who both said that, whose testimony both reflected that DeSaro had not cooperated.  Walther said that when he approached him, he was rebuffed. So we were not relying on the fact of cooperation, but merely looking to what Salemi believed and what he said he believed to one of his co-conspirators to show his intent. I get that, but that makes my point even more important, I think. If you're not relying on that fact for its truth, then even more important that you would let defense counsel know and let the judge know that the statement was untrue. Well, and here, I think one part of this that's in the record, one is not, that is a response to that question. First, there was no objection to it. And I think that's, again, if the defense counsel had been surprised, wait, we'd never knew he was talking to. How could they object if they didn't know that it was untrue? Well, they could object that it was information that they had not heard. That would be a communication with law enforcement, presumably would be something that would have been disclosed. And the other part, which is unfortunately not in the record because it wasn't objected to, was that it was disclosed. This was a statement. It was not the first time that DeLuca had said this. This had been in prior testimony, grand jury testimony, I believe, that had been produced in discovery. So it was not a surprise. And that's why there was no objection. Now, I realize that's not in the record, but it helps explain why there was nobody saying, wait a second, you never told us he was talking to you or that's the first time we've heard this. It wasn't the first time they'd heard it. They didn't object because they knew it. And I think the other part that's important to note is if they had a concern that a belief that it was true was problematic to them and worth sorting out, they had numerous opportunities to correct it. They could have on cross-examination asked DeLuca, did you ever come to find out whether that was true or not? You know, he may well have known, but they had numerous law enforcement officers on the stand subsequent to that. And they could have said, was there any evidence that he was cooperating, that he spoke to Mr. Wyshek? They could have called witnesses as part of their case to question it. And they didn't. And the reason they didn't is that they knew it and that they, for their own reasons, chose to let it lie. But the idea that they were disadvantaged or it was unfair to them, again, there was no objection that it was a surprise. There was no attempt by them to cure it. The government did not rely on it for its truth, but presented evidence that he rebuffed attempts at cooperation and said so in closing. So again, it's possible, I suppose, it came as a surprise to the judge. It certainly did not to the defense counsel. And they, although they had the opportunity to correct it as to its truth, if they wished to, they declined to do so despite ample chance to do so over many days of trial. So again, we don't see that this unobjected to issue could possibly reach the air of plain air. And we also don't think there was, again, anything to correct where the clear intent of the government was to rely on it for as a statement of belief. So I'm not quite following. If we stay, I think we have to stay with what's in the record. If we stay with what's in the record, then I'm not following your argument as to how counsel had, should have corrected this. Cause let's assume they thought that were it not true, the prosecutor would have said something. So they assumed it was true because the prosecutor was silent. Well, again, I don't think, again, it was corrected at the end. And if that came as a surprise to them, they could have raised it then. I mean, I think, I do think that there's a, this is an unobjected to error. And while one can say that in a hypothetical, which turns out in reality to be counterfactual, that they may have been surprised and not known what to do. The truth is that the government made clear that DeSaro had rebuffed attempts at cooperation in his direct case, clarified in his closing. If I can complete the thought, but at that point, if that came as a surprise to them in the government's closing, there was still an opportunity to object and no objection was made. And again, I think then at that point, there's some burden on the defense counsel that to have not erased it in any fashion, it does become an error issue and they cannot show that it was prejudicial. Thank you. Any more questions from the bench? Thank you, your honors. Thank you, Mr. Krohn. At this time, would attorney Gerzog please return for his two minute rebuttal? And please introduce yourself back to the record, please. May it please the court. My name is Lawrence Gerzog for Francis P. Salemi. I have a hypothetical situation to offer the court to help me explain how I think Fowler relates to this. Imagine, if you will, a passerby witnesses one person pushing another person into a car, looks at that situation, thinks maybe it's a couple having a fight, maybe it's a domestic dispute, who knows what it is, but thinks no big deal, not going to do anything about it, not really my business. Is that person reasonably, is that person, is it possible that that person will describe that situation to law enforcement and that that law enforcement may be federal? Sure, it's possible. It's always possible. Is it reasonably likely that that person will describe that situation to a law enforcement officer? No, it is not reasonably likely. And in fact, the person hasn't done it. Here, you would have to show, the government would have to show, not only that it was reasonably likely that the victim was going to inform, we can leave the judges out of it, was going to inform a federal law enforcement official and that that was the reason that Mr. Salemi allegedly had him killed or killed him. And under those circumstances, you have a situation where, in fact, the victim didn't speak to anybody. Federal? Yes, Your Honor. So suppose Salemi thought there was, suppose Salemi thought there was, are we getting some echo here? Suppose Salemi thought there was a one out of 50 chance DeSaro was going to talk to the U.S. attorney and so he ordered him killed and killed him. Are you saying that wouldn't violate the statute? Your Honor, I have very limited knowledge of Atlantic City or Las Vegas, so I don't know what's considered reasonably probable in terms of odds. But I think that there has to be, there has to be something that makes it more than possible. And I think under any circumstances, something like that is always possible. If you have knowledge of a crime or of something you think may possibly be a crime, then it's always possible that you would talk to law enforcement about it. Can I ask a follow up on that? If I read the statute's text, as I read it, it just says that they had to intend the communication of, right? Yes. So if they had just given that instruction, just read the statute, assume that couldn't possibly be error. Actually, Judge, I think it could be because the statute was obviously written before the Fowler decision and the Fowler decision put color on the statute. And because the statute was somewhat ambiguous, that's why the Fowler decision had to put the color on that language. And so- Well, let's see, I can't actually, I'm trying to isolate two different points. There's the point about the, if I intend the communication, the question is how likely does it have to be that the communication I intended to stop the communication of, there's a question of how likely it has to be that that communication would pertain to a federal official. But there's a prior question about just the intent that I was trying to stop them from making the communication of. And I guess what I'm trying to figure out is with respect to that issue, whether what you're saying is that the insertion of the word possible watered down the intent requirement itself. I think- If you just said intent, it might've been better for you than if they inserted the word possible. Well, I think that's, I think the problem is the ambiguity in the statute and that Fowler- Thank you. Okay, thank you, your honors. Thank you. Attorney Grzog, if you could please mute your device. Attorney Shea, you have one minute. Please reintroduce yourself to the record. Continued, good morning. Mark Shea for Paul Wiedek. I guess I'll quickly address the Wyshack-Deluca issue. I would just point out that the government argues that law enforcement was put on the stand later and we could have tried to correct it through law enforcement. My belief is that the individual agents that Mr. Deluca had spoken to regarding these statements, the Wyshack statement, were not called, that his handlers were, meaning the individuals who sat in on his interviews, were in the courtroom. I'll acknowledge that, which isn't part of the record, I don't think, but they were not called to the stand. So it's not something we could have cleared up with them. I'd also point out that it's a statement allegedly from Solemni so that the ability to cross-examine on that is very difficult, as we point out with the whole Bruton issue. I'm not trying to get into that, but I'm just saying it's hard to get at what Deluca is claiming Solemni said. The person who knows it's not true, it's Mr. Wyshack. Deluca isn't saying it's not true. We went at Deluca in other ways. I think if one looks at the tapes and the way we went at him with the tapes, we tried to show he was lying on obvious things. I mean, literally... If you have any question on that, thank you for this time. Thank you, Mr. Shea. Thank you, Judge. That concludes argument in this case. Attorney Gerzog, Attorney Shea, and Attorney Crum, you should disconnect from the hearing at this time.